UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

Present: The Honorable    STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**     IN CHAMBERS ORDER DENYING PLAINTIFF'S MOTION TO
REMAND [14]

**Introduction**

　　The Ninth Circuit instructs district courts to evaluate CAFA jurisdiction based on "the reality of what is at stake in the litigation." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).   Nevertheless, this peculiar version of reality remains perpetually frozen at the time of removal. *See id.* at 1198 n.1.   Thus district courts are not free to evaluate the reality of the lawsuit as it develops with that aid of discovery.

　　The outcome of the present motion to remand depends entirely on whether the Court accepts the plaintiff's narrow class definition, developed with the aid of discovery, or the defendant's broad definition, based on the language of the complaint and the identity of the plaintiff.   The Court concludes that it must assess the amount in controversy based on the broad language of the complaint, and therefore finds that the motion to remand must be denied.[1]

---

[1] Though the Court gave plaintiff leave to amend his complaint based on counsel's representations at the hearing on September 16, 2015, the Court did not make a finding as to which complaint would be operative for the purposes of determining jurisdiction.   (*See* Dkts. 43, 45.)   After considering the arguments in the parties supplemental briefing, (*see* Dkts. 51–52.), the Court finds that the plaintiff was aware of the operative facts such that he could have limited the class definition to contract workers generally or contract workers assigned to work at Evolution Fresh by Volt Management Corporation specifically at the time of the initial complaint.   He did not have all the information about Evolution's non-exempt workforce, but he did know that Evolution was at most his joint employer.   (*See* Compl. ¶ 21.)   Therefore, while the Court does not believe the

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

## Background

On October 28, 2014, plaintiff Gerardo Salcido ("Salcido" or "Plaintiff") filed this putative wage-and-hour class action against defendant Evolution Fresh ("Evolution" or "Defendant") in California state court.  (Dkt. 1-2.)   Salcido seeks to bring the action on behalf of himself and "[a]ll current and former hourly-paid and non-exempt individuals employed by any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment."  (Compl. ¶ 12-13.)   In his complaint, Salcido advanced claims under California law: (1) failure to pay overtime wages; (2) failure to pay meal period premiums; (3) failure to pay rest period premiums; (4) failure to pay minimum wages; (5) untimely payments; (6) failure to pay wages after termination; (7) improper wage statements; (8) failure to keep proper payroll records; (9) failure to reimburse business expenses; and (10) violation of California's Unfair Competition Law ("UCL"). (Compl. ¶¶ 47-116.)

Salcido asserts that Evolution employed him "as an hourly-paid non-exempt employee from approximately May 2013 to approximately July 2013."  (Compl. ¶ 18.)   He alleges that Evolution "engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt employees[.]"  (Compl. ¶ 25.)   According to Salcido, "[t]his scheme involved, *inter alia*, failing to pay [him and the putative class members] for all hours worked, missed meal periods and rest breaks in violation of California law."  (*Id.*)   Evolution also purportedly failed to provide Salcido and the putative class members with complete and accurate wage statements because, *inter alia*, Evolution's statements failed to include the total number of hours worked.  (Compl. ¶ 33.)

Salcido also alleges that "[a]t all material times set forth herein," Evolution "engaged in a uniform policy and systematic scheme of wage abuse against" putative class members, including: failing to pay overtime wages for all hours worked, failing to provide the requisite uninterrupted meal and rest periods, failing to pay at least minimum wages for all hours worked, failing to pay all wages owed upon discharge or resignation, failing to pay all wages within a permissible time, failing to provide complete or accurate wage statements, failing to keep complete or accurate payroll records, failing to reimburse for necessary business-related expenses and costs, and failing to properly compensate Plaintiff and the other class

---

logic of *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111 (9th Cir. 2015), allowing the consideration of an amended complaint, is limited to the "local controversy" exception, this is not an appropriate case for such a clarification.

:
_____

Initials of Preparer
_____
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

members. (Compl. ¶¶ 37-45.)

On December 1, 2014, Evolution filed a notice of removal, removing the case to this Court. (Dkt. 1.) Evolution asserted jurisdiction under the Class Action Fairness Act ("CAFA"). (Dkt. 1.) On December 22, 2014, Salcido filed a motion to remand the case. (Dkt. 14.) The parties have briefed the issues exhaustively. (*See* Dkts. 21, 22, 28, 29, 30, 31, 40, 41.)

**Statement of Facts**

*Evolution Fresh Declarations*

In support of removal, Evolution has offered declarations from several company employees. Robert Dawson is a human resources executive at Evolution. (Dkt. 1-4, ¶ 1.) He stated that Evolution is a Delaware corporation with its principal place of business in Washington. (*Id.* ¶ 2–8.) According to Dawson, Evolution has employed 416 non-exempt employees in California since October 28, 2011 (working a total of 28,881 work weeks). (Dkt. 21-1, ¶ 2.) 133 of those employees have since left the company. (*Id.*) Dawson represents that Evolution has employed 355 non-exempt employees in California since October 28, 2013 (working a total of 14,538 work weeks). (*Id.*)[2]

Dawson also represented his best approximation of other company data, based on his knowledge of the company's operations. Because Evolution databases do not include data from 2010 to early 2011, Dawson offered his opinion. (Dkt. 21-1, ¶ 3.) He estimated that the company has had approximately 440 non-exempt employees in California since October 28, 2010 (working approximately 36,000 work weeks).[3] (Dkt. 1-4, ¶ 10.) He also averred that: (1) the average salary for non-exempt California workers has been approximately $14 per hour in the time period; (2) employees are typically scheduled to work eight hours a day, five days a week; and (3) many employees regularly work overtime hours. (Dkt. 21-1, ¶¶ 4–5.)

---

[2] Percy Perera, the Evolution employee responsible for querying the database containing employee data, filed a declaration explaining the process he used for retrieving records and estimating averages. (Dkt. 29-1.)

[3] The Court finds that although Evolution did not have data for workweeks worked from October 28, 2010 to October 28, 2011, Dawson's estimate of 7,172 workweeks worked during that time period is reasonable given his firsthand knowledge that the number of California employees has been relatively constant in the time period. (*See* Dkt. 21-1 ¶ 3.)

:

_____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

Evolution also offered a declaration form Tonya Echols, a human resources manager at the company's California factory.  (Dkt. 29-4.)  Echols estimated that: (1) there were approximately 75 contract workers on average assigned to California factory locations from October 28, 2013 to October 28, 2014; (2) contract employees are typically scheduled to work eight hours a day, five days a week; (3) contract employees are paid on a weekly basis; and (3) many contract employees regularly work overtime hours.  (*Id.* ¶ 2.)

*Plaintiff's Deposition*

On June 21, 2015, Salcido testified in a sworn, videotaped, deposition.  (*See* Dkt. 44.)  During his employment, Salcido estimated that he worked 80–90 percent of his shifts at Evolution Fresh's San Bernardino factory and his remaining shifts at their Rancho factory.  (*See id.* 80:1–7.)  Salcido stated that after arriving but before he would clock in at the San Bernardino location he would take ten to fifteen minutes to change into his work clothes.  (*Id.* 106:23–107:21.)  At the Rancho location he stated that he would only put on his boots before clocking in, a process that took two to three minutes.  (*Id.* 111:12–14; 120:5–25.)

He testified that during his employment, he estimated that he did not receive three to four rest breaks to which he believed he was entitled.  (*Id.* 141:13–25; 143:9–11.)  Those missed breaks took place when the factory was falling behind production quotas.  (*Id.* 137:9–17; 142:1–3.)  Otherwise, Salcido did not have any interruptions in his rest breaks.  (*Id.* 139:14–20.)

Salcido stated that he was never denied a meal break in its entirety, except in circumstances where he was entitled to take two meal breaks.  (*Id.* 145:8–19.)  He stated that he worked 12-hour shifts at the Rancho location for a little over a week and did take two meal breaks.  (*Id.* 146:3–11.)  But Salcido estimated that he did not receive a second meal break to which he was entitled on one or two occasions while he was working at the San Bernardino location.  (*Id.* 124:18–21; 146:16–147:6.)  On approximately five to ten occasions, Salcido only received twenty to twenty-five minutes of meal break time because he had to take time to change into his uniform and clock back in.  (*Id.* 147:17–148:9.)

Salcido stated that he did not believe he was not paid for overtime work.  (*Id.* 136:4–12.)  But he admitted that he did not check all of his paychecks.  (*Id.* 161:15–24.)  And he stated that in several instances he saw that someone needed help and continued to work after he had already clocked out.  (*Id.* 125:11–25.)

_____   :   _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

**Legal Standard**

CAFA gives federal district courts original jurisdiction over class actions involving at least 100 class members, minimal diversity, and the amount in controversy exceeds $5,000,000.   28 U.S.C. § 1332(d).   In its notice of removal, a defendant is required only to offer a "short and plain statement of the grounds for removal."   28 U.S.C. § 1446(a).   A "defendant's amount-in-controversy allegations should be accepted when not contested by the plaintiff or questioned by the court."   *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014).

There is no antiremoval presumption in CAFA cases.   *Dart*, 135 S. Ct. at 554.   But when a plaintiff contests a defendant's amount-in-controversy calculation, the defendant still bears the burden of establishing that removal was proper by a preponderance of the evidence.   *Id.* at 553-54; *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013).

The Ninth Circuit has defined the broad outlines of the process after a plaintiff contests removal jurisdiction under CAFA.   "In determining the amount in controversy, courts first look to the complaint." *Ibarra*, 775 F.3d at 1197.   Next, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal."   *Id.* (internal quotation marks omitted).   This procedure prevents a defendant from establishing federal jurisdiction "by mere speculation and conjecture, with unreasonable assumptions," instead requiring the parties to rely on "real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."   *Id.* at 1197–98.

There is limited appellate guidance on how district courts should interpret the evidence presented by the parties.   *Duberry v. J. Crew Grp., Inc.*, No. CV 14-8810 SVW (MRW), 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015).   When a party relies on a chain of reasoning that includes assumptions, those assumptions must be reasonable.   *Ibarra*, F.3d at 1199 (assumptions "cannot be pulled from thin air but need some reasonable ground underlying them").   Therefore it would be unreasonable to assume a 100% violation rate based only on a plaintiff's allegation of a "pattern and practice" of labor violations.   *Id.* at 1198–99 ("a 'pattern and practice' of doing something does not necessarily mean *always* doing

_____     :
Initials of Preparer  _____
                      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

something").[4]   But a defendant may establish the amount in controversy by presenting admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class.   *See LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202–03 (9th Cir. 2015).

Given these goal posts, district courts remain divided on whether it is appropriate to assume variables necessary to calculate the in the amount in controversy where the language of the complaint is not readily reduced to numbers and the defendant does not present admissible evidence on the issue.   *See Duberry*, 2015 WL 4575018, at *2.   Some courts faced with a complaint containing indeterminate language have allowed defendants to attach numerical values to the plaintiff's words.   *See Sanchez v. The Ritz Carlton*, No. CV 15-3484 PSG (PJW), 2015 WL 4919972, at *4 (C.D. Cal. Aug. 17, 2015) (approving a defendant's assumed violation rates appropriate based on the language of the complaint); *Tajonar v. Echosphere, L.L.C.*, No. 14CV2732-LAB RBB, 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015) (accepting a defendant's violation rate of less than one percent when the complaint arguably suggested a uniform policy); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (finding defendant's assumptions about missed meals and rest periods reasonable); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding a 50% violation rate reasonable based on the allegations in the complaint); *Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *6 (N.D. Cal. Mar. 1, 2012) (accepting as reasonable defendant's assumption of one violation per week).   Other courts have refused to attribute a numerical value to vague modifiers without additional evidence supporting the assumed rate. *See Townsend v. Brinderson Corp.*, No. CV 14-5320 FMO RZX, 2015 WL 3970172, at *6 (C.D. Cal. June 30, 2015) (rejecting 100% violation rate assumption); *Lafountain v. Meridian Senior Living, LLC*, No. CV 15-03297-RGK PJWX, 2015 WL 3948842, at *3 (C.D. Cal. June 29, 2015) (rejecting defendant's assumptions regarding unpaid wages, unpaid overtime, and missed meal and rest periods); *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1126–29 (C.D. Cal. 2010) (rejecting cases that allow a defendant to assume violation rates based only on indeterminate allegations).

**Analysis**

---

[4] Even after *Ibarra*, a defendant may assume a 100% violation rate when a complaint alleges a practice that is universally followed.   *See Ibarra*, 775 F.3d at 1199.   Thus, it is not unreasonable to assume a 100% violation rate when the allegations support the inference that a defendant "may potentially violate the law in each and every situation where those policies are applied."   *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCX, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015).

:

_____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

*Allegations in the Complaint*

Evolution interprets the complaint to allege violations of the California Labor Code for each and every pay period worked by the putative class.   (*See* Dkt. 29, 10–11.)   The complaint alleges that "[a]t all material times" Evolution engaged in a series of unlawful acts as a part of "a uniform policy and systematic scheme of wage abuse."   (Compl. ¶¶ 25, 37–45.)   Based on this allegation, Evolution assumes that each putative class member had: (1) at least one minute of unpaid time in every pay period; (2) 30 minutes of unpaid overtime per week; (3) 30 minutes of unpaid regular time per week; (4) one meal break violation per week; (5) and one rest break violation per week.   (Dkt. 29, 10–13.)

Salcido contends that there is no basis for Evolution's assumed number of violation hours or violation rates.   (Dkt. 31, 5.)   According to Salcido, Evolution offered no rationale for its estimated number of unpaid hours, such as off-the-clock commuting time.   (*Id.*)   Salcido also argues that Evolution's assumptions about the regularity of other violations are speculative.   (Dkt. 31, 8.)

The Court finds that the language of the complaint offers some guidance consistency of the purported violations but does not shed light on the extent of violations.   Unlike the "pattern and practice" that lead to "multiple" violations in *Ibarra*, Salcido alleges a "uniform policy and systematic scheme." (Compl. ¶ 25.)   Therefore, as the court determined in *Meija*, it is not unreasonable to assume that the company applied the allegedly unlawful policies to all putative class members.   *See Meija*, 2015 WL 2452755, at *4; *accord Duberry*, 2015 WL 4575018, at *6.   Indeed, a uniform policy is "characterized by a lack of variation; identical or consistent."   *Black's Law Dictionary* 1668 (9th ed. 2009.).   Therefore, it is reasonable to assume, from the face of the complaint, that Evolution applied the same policy each and every pay period, based on the allegation that they acted pursuant to a "uniform" scheme.

But even though the complaint alleges that Evolution applies the same policy, it does not establish the extent of the purported violations.   A uniform policy and systematic practice of depriving employees of a de minimis amount of wages at any interval can still be actionable.   Thus, the regularity of a practice does not define its magnitude.   And where, as here, the Court is presented with evidence regarding the actual violation rates, the Court can use that evidence to contextualize the allegations in the complaint. *See Duberry*, 2015 WL 4575018, at *6; *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (crediting testimony from putative class members on number of hours actually worked per week). Thus, the Court finds that the complaint, where not controverted by contrary evidence, establishes the regularity of Evolution's practices for the purposes of calculating the amount in controversy.   Evolution

_____   :   _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | | Date | January 6, 2016 |
|---|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | | |

still carries the burden of establishing evidence of the magnitude of purported violations.

*Evolution's Estimate of Potential Class Damages*

Evolution offers an estimated amount in controversy based on six types of relief sought in Salcido's complaint:

| Alleged Violation | Defendant's Calculation | Estimated AIC |
|---|---|---|
| Unpaid Wages (Dkt. 29, 10-11.) | Overtime: .5 hours x $21 x 36,000 workweeks = $378,000<br>Minimum Wage: .5 hours x $8 x 36,000 workweeks = $144,000<br>Liquidated Damages: .5 hours x $8 x 14,500 workweeks = $58,000<br>Penalties: (355 initial violations x $100) + (7269 subsequent violations x $250) = $1,764,000 | $2,344,000 |
| Meal and Rest Breaks (Dkt. 29, 13.) | Meal: 1 meal violation x $14 x 36,000 workweeks = $504,000<br>Rest: 1 rest violation x $14 x 36,000 workweeks = $504,000 | $1,008,000 |
| Wage Statements (Dkt. 29, 14.) | Initial Penalty: 355 initial violations x $50 = $17,750<br>Subsequent Penalty: 6,895 subsequent violations x $100 = $689,500 | $707,250 |
| Waiting Time Penalties (Dkt. 29, 16.) | 30 Day Penalty: 30 days x 8 hours x $14 x 133 former employees = 443,520 | $446,880 |
| Late Regular Pay (Dkt. 29, 16-17.) | Late Pay: 7,269 pay periods x $200 = $1,453,800 | $1,453,800 |
| Contract Workers (Dkt. 29, 18.) | Adding an estimated 75 contract workers to the class for several claims | $2,043,750 |
| Attorney's Fees (Dkt. 29, 19-20.) | Attorney's Fees: $8,003,680 potential damages and penalties x 25% benchmark = $2,000,920 | $2,000,920 |
| Total | | $10,004,600 |

:
_____

Initials of Preparer
_____
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

Whether these estimates can be relied upon depends on whether Evolution based them on a chain of reasoning founded on reasonable assumptions.   The Court evaluates each of Evolution's amount-in-controversy contentions in turn.

*Unpaid Wage Claims*

First, Evolution argues that Salcido's minimum wage penalties claim places $1,764,000 in controversy.  (*See* Dkt. 29, 10.)   To reach this figure, Evolution assumes that every putative class member worked some unpaid time in every pay period.   That is, there was a 100% violation rate with respect to minimum wage penalties.   Evolution argues that this assumption is reasonable exclusively based on the language in the complaint, which states that "[a]t all material times" Evolution engaged in a series of unlawful acts as a part of "a uniform policy and systematic scheme of wage abuse."   (Compl. ¶¶ 25, 37–45; Dkt. 29, 10.)    Whether or not this assumption is supported by the language of the complaint, it is consistent with Salcido's sworn deposition.   In his deposition, he stated that at both of the Evolution locations where he worked he engaged in daily off-the-clock work by changing into his uniform before clocking in for the day.   (Dkt. 44, 106:23–107:21; 111:12–14; 120:5–25.)   And he stated that, in the brief time that he worked at Evolution, there were several instances where he returned to work after clocking out.   (*Id.* 125:11–25.)   In combination with the allegations in the complaint, the Court finds that Evolution's minimum wage penalty assumption is reasonable and places $1,764,000 in controversy.

Next, Evolution contends that Salcido's other minimum wage and overtime claims place $580,000 in controversy.   (Dkt. 29, 11.)   Evolution argues that it is reasonable to assume that putative class members worked thirty minutes of unpaid regular time and thirty minutes of unpaid overtime every pay period.   (Dkt. 29, 11.)   Though this may be a facially conservative estimate, Evolution provides no evidentiary basis for the assumed rates.   Further, because at least some putative class members were paid in increments as small as one hundredth of an hour, it is unclear that a thirty minute assumption is actually conservative.   *See* Dkt. 44 Exs. 9–13.   While a defendant opposing a motion to remove is "not required to comb through its records to identify and calculate the exact frequency of violations," *Oda*, 2015 WL 93335, at *5, neither can they make assumptions without giving the Court some basis for evaluating the reasonableness of those assumptions in the context of the specific controversy at issue.   As Evolution states "Salcido cannot reasonably dispute the assumption that the alleged 'systematic' violations resulted in one minute of unpaid time every two weeks."   (Dkt. 29, 10.)   But neither can Evolution reasonably assume that the allegations provide a basis for finding one hour of combined unpaid regular and overtime per week.   Accordingly, the Court finds that Evolution has failed to establish this portion of their claim by

                                                                                                  :
                                                                                    _____  _____
                                                              Initials of Preparer
                                                                                             PMC
                                                                                    _____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

a preponderance of the evidence.

*Meal and Rest Break Claims*

Evolution argues that Salcido's meal and rest break claims place $1,008,000 in controversy. (Dkt. 29, 13)   Evolution bases this figure on the position that each putative class member places two workdays of premium per pay period in controversy.   (*Id.*)   Evolution again relies heavily on the language of the complaint, stressing that Salcido alleges "systematic" violations "[a]t all material times" due to "uniform" corporate "policies and practices of requiring employees . . . to work through their meal and rest periods . . . ."   (Compl. ¶¶ 25, 38, 113.)   But these assumptions are belied by Salcido's deposition testimony.   In his deposition, Salcido stated that he missed rest breaks on three to four occasions and missed one to two meal breaks.   (Dkt. 44, 141:13–25; 143:9–11.)   Accordingly, the Court finds that Evolution's assumed violation rate of two days per pay period is not reasonable.[5]

*Wage Statement Claim*

Evolution argues that Salcido's wage statement claim places $707,250 in controversy.   (Dkt. 29, 14–15.)   It arrives at this figure by estimating the total number of bi-weekly wage statements that would have been received by putative class members and then computing statutory penalties.   (*See id.*) Evolution assumes that, based on Salcido's allegation of failure to record all hours worked, each and every wage statement was deficient and subject to penalty.   (*Id.*)   These assumptions follow logically from the language of the complaint and Salcido's deposition testimony.   The complaint alleges "a uniform policy and systematic scheme of wage abuse."   (Compl. ¶ 25.)   And in Salcido's deposition, he alleged that he performed off-the-clock work at both of the locations where he worked, on a daily basis.   (*See* Dkt. 44, 106:23–107:21; 111:12–14; 120:5–25.)   Accordingly, Evolution's assumptions underlying Salcido's wage statement claim are reasonable and the Court finds that Evolution has established that the claim places $707,250 in controversy by a preponderance of the evidence.

*Waiting Time Claim*

Next, Evolution contends that Salcido's claim under § 203 places $440,000 in controversy.   (Dkt.

---

[5] Though Salcido's deposition testimony would support a more modest amount in controversy finding, the Court does not speculate on what would be appropriate, given that it is unnecessary to the outcome of the motion.

Initials of Preparer

:

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

29, 15–17.)   Evolution explains that this claim is derivative of Salcido's wage and break claims, and therefore argues that it is entitled to assume that all class members put the maximum penalty at issue.  (*Id.* at 15.)   Evolution states that 133 class members have left their employment since October 28, 2011.  (*Id.* at 16.)   According to Evolution, it can assume a full thirty-day penalty because the allegation is that Evolution never paid employees in full and therefore would never have paid former employees all that they were due upon leaving the company.  (*Id.*)   Because the Court finds that Salcido's allegations and deposition testimony support the notion that all class members were underpaid during their employment and the deficiency was not corrected at the end of their employment, this assumption is reasonable.  *See, e.g., Roth*, 799 F. Supp. 2d at 1125–26.   Thus, the Court finds that Evolution has established that Salcido's claim under § 203 places $440,000 in controversy.

*Late Regular Pay Claim*

According to Evolution, Salcido's sixth cause of action places $1,453,800 in controversy because a violation of section 204 could result in civil penalties under section 210.  (Dkt. 29, 17–18.)   However, Evolution does not establish that Salcido has a private right of action to recover under §§ 204 and 210.  *See Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011) *aff'd*, 546 F. App'x 613 (9th Cir. 2013) (finding no private right of action under section 204 or 210); *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL 1338297, at *17 (N.D. Cal. Mar. 28, 2014) (agreeing with *Johnson* that there is no private right of action).   In short, nowhere does Salcido allege that he is entitled to penalties under § 210 and it is seriously doubtful that he would be entitled to penalties if he had pled such a claim.   Therefore, the Court finds that Evolution has not established the amount in controversy with respect to Salcido's late regular pay claim.

*Contract Workers' Claims*

Evolution argues that over $2 million is placed in controversy based on a consideration of Volt Management Corporation contract workers in Evolution's factory locations.  (Dkt. 29, 18.)   If these individuals are included in the amount-in-controversy calculations, Evolutions asserts that they would bring over $2 million in potential exposure, based on the minimum wage penalty, wage statement, and late regular pay claims.  (*Id.*)   The Court finds that it is reasonable to include these employees in the amount-in-controversy calculation.   Salcido's complaint proposes a class that includes "[a]ll current and former hourly-paid or non-exempt individuals employed by" Evolution.  (*See* Compl. ¶ 13.)   Thus, on the face of the complaint alone, it is clear that it implicates Evolution's regular employees.   But the

Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:14-cv-09223-SVW-PLA | Date | January 6, 2016 |
|---|---|---|---|
| Title | Gerardo Salcido v. Evolution Fresh, Inc. | | |

complaint also makes it clear that Salcido intended to pursue a joint-employer theory of liability. (*See id.* ¶ 21.) And given that Evolution was aware that Salcido was in a group of contract workers assigned from Volt to Evolution factories, it is reasonable to include those workers for the purpose of calculating the amount in controversy under the same joint-employer theory. However, in light of the findings above, only Salcido's minimum wage penalty claim (placing $963,750 in controversy) and plaintiff's wage statement claim (placing $300,000 in controversy) are reasonably included in Evolution's amount-in-controversy calculation. Accordingly, the Court finds that the contract workers' claims place an additional $1,263,750 in controversy.

  *Attorneys' Fees*

  Consistent with other cases where attorneys' fees are provided for by statute, Evolution argues that the Court should include a 25-percent attorneys' fee multiplier to the amount in controversy. (Dkt. 29, 19–20.) The Court finds, consistent with its previous rulings on the issue, that a 25 percent multiplier is appropriate. *See, e.g., Oda,* 2015 WL 93335, at *5. Based on the $4,175,000 placed in controversy by the claims discussed above, the Court finds that Salcido's request for attorneys' fees places an additional $1,043,750 in controversy.

**Order**

  The Court finds that Evolution has adequately proven the amount in controversy exceeds $5 million.[6] The Court therefore DENIES Salcido's motion to remand.

IT IS SO ORDERED.

---

[6] Evolution has proven that at least $5,218,750 was placed in controversy by Salcido's initial complaint. This is comprised of $1,764,000 in minimum wage penalties, $707,250 for wage statement claims, $440,000 in waiting time claims, $1,263,750 from contract workers' claims, and $1,043,750 in attorneys' fees.

                                    :

Initials of Preparer

          PMC